IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00887-MEH

WILLIAM R. BRAKE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

## ORDER
___

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff, William R. Brake, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and his application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g). The Court first holds the ALJ did not err in assigning little weight to the opinion of Mr. Brake's treating physician. Next, substantial evidence supports the ALJ's finding that Mr. Brake's impairments do not meet Listing 1.04 for disorders of the spine. Finally, the ALJ did not err in determining Mr. Brake's RFC or in concluding that Mr. Brake can perform the duties of his past relevant work, as they are conducted in the national economy. Accordingly, the Court affirms the ALJ's decision that Mr. Brake was not disabled from May 15, 2013 through the date of the decision.

**BACKGROUND**

I.  **Mr. Brake's Conditions**

Plaintiff, William R. Brake, was born on August 4, 1952; he was sixty-one years old when he filed his application for DIB and SSI. [AR 113]. Mr. Brake claims he became disabled on May 15, 2013 due to physical impairments. [*Id.*]

Although Mr. Brake first saw Cardiologist Stephen Crowley in 2002, [AR 293–94], he did not regularly visit Dr. Crowley until 2011. [AR 252]. During one of Mr. Brake's 2011 visits with Dr. Crowley, he reported "progressive shortness of breath, difficulty bending over, but no chest pain." [*Id.*]. However, in two separate 2012 visits, one in March and the second in September, Mr. Brake reported no chest pain. [AR 237–48].

After falling at home in May 2013, Mr. Brake underwent an MRI of the cervical spine at the recommendation of Dr. John Oro. [AR 204, 219–21]. The MRI revealed "multilevel degenerative disk disease and foraminal stenosis." [AR 220]. Mr. Brake subsequently reported to Dr. Oro that he experienced numbness and tingling in his hands and pain in the back of his neck. [AR 216–18]. In light of his symptoms and medical history, Dr. Oro recommended a three-level anterior cervical discectomy and fusion.[1] [*Id.*] Mr. Brake consented and underwent surgery in August 2013. [AR 213–15].

During an appointment with Dr. Crowley on September 17, 2013, Mr. Brake reported shortness of breath, but he stated that he was not suffering muscle weakness, chest pain, or numbness. [AR 234]. Shortly thereafter, Mr. Brake reported to Dr. Oro for a surgery follow-up

---

[1] An anterior cervical discectomy and fusion removes a herniated or degenerative disc in the neck. The Mayfield Clinic, *Anterior Cervical Discectomy & Fusion*, https://www.mayfieldclinic.com/PE-ACDF.htm (last visited September 11, 2017).

appointment. [AR 209]. Dr. Oro noted that Mr. Brake had full strength in his deltoid, biceps, triceps, and hand grips, but the numbness in his upper extremities had not improved. [*Id.*]. Mr. Brake continued to report numbness in his hands and feet during an October 25, 2013 appointment with Dr. Oro. [AR 208]. By December 16, 2013, Dr. Oro noted Mr. Brake was improving well and has only "some residual neck pain if he sleeps the wrong way." [AR 207]. However, in March 2014, Dr. Oro stated that Mr. Brake continued to experience "neurologic symptoms, including pain, decreased sensation, and weakness in his hands." [AR 206]. Additionally, Dr. Oro noted that Mr. Brake is not able to return to work at King Soopers. [*Id.*]

On April 23, 2014, Dr. Oro completed an opinion statement, which concluded that Mr. Brake is permanently unable to return to his prior employment. [AR 296]. Dr. Oro provided the following restrictions for Mr. Brake: (1) no climbing racks or ladders, (2) no operating machinery, (3) no walking or standing, (3) no stooping or kneeling, (4) no carrying objects greater than five pounds, and (5) no consistent use of the hands or wrists. [*Id.*]

Mr. Brake visited Dr. Crowley for check-up appointments on August 13, 2015 and February 16, 2016. [AR 229–32]. Mr. Brake informed Dr. Crowley that he is able to walk around his lake and take care of his grandchildren. [AR 230]. Although he stated he was not experiencing chest pain, muscle weakness, or numbness, Mr. Brake continued to report shortness of breath. [*Id.*]

## II. Procedural History

Mr. Brake asserts he first became disabled on May 15, 2013. [AR 113]. On August 28, 2014, the SSA initially denied Mr. Brake's application for DIB and SSI. [AR 62–66]. Mr. Brake subsequently requested a hearing before an ALJ, which took place on March 7, 2016. [AR 28, 67]. On April 5, 2016, an ALJ issued an opinion holding that Mr. Brake is not disabled. [AR 16–24].

According to the ALJ, although Mr. Brake has severe impairments, they do not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 18–20]. Then, the ALJ held that, despite Mr. Brake's limitations, he is capable of performing his past work as a stock control manager, as that job is generally performed in the national economy. [AR 34–35].

The SSA Appeals Council subsequently denied Mr. Brake's request for review, making the SSA Commissioner's denial final for the purpose of judicial review. *See* [AR 1–3]; *see* 20 C.F.R. § 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."). Mr. Brake timely appealed the ALJ/Commissioner's final decision to this Court. Compl., ECF No. 1.

## III. Hearing Testimony

The ALJ held a hearing regarding Mr. Brake's application on March 7, 2016. [AR 28–51]. Mr. Brake and a vocational expert testified at the hearing. [AR 29]. Mr. Brake stated that he stopped working in May 2013 because of a neck injury. [AR 36–37]. Although he continued looking for a job, Mr. Brake informed the ALJ that he did not think he would be able to maintain employment. [AR 36].

The ALJ then asked Mr. Brake about his current pain. [AR 36–37]. Mr. Brake stated that his neck and shoulders cause him discomfort and keep him from lifting more than twenty-five pounds. [AR 37]. He further testified that he could stand for only three to four hours during an eight-hour work day. [AR 38]. He then stated that although the spine surgery he had in 2013 improved his condition, he still has loss of feeling in his fingertips. [AR 39–40].

Mr. Brake also testified about his activities of daily living. [AR 41–42]. He first stated that

he regularly babysits his granddaughters, who are eight months and six years old. [AR 41]. He changes the younger granddaughter's diaper and feeds her two meals a day. [*Id.*] Mr. Brake testified that he can lift the eight-month-old granddaughter, who weighs approximately fifteen pounds, but he cannot lift the older granddaughter, who weighs sixty-five to seventy pounds. [*Id.*] Mr. Brake then told the ALJ that he does some cooking, no cleaning, and all of his own laundry. [AR 41–42]. Additionally, he stated that he goes up and down his stairs once per day. [AR 42]. Regarding his heart condition, Mr. Brake testified that it has not limited his ability to put his hands over his head, but it causes him shortness of breath. [AR 42].

In response to questions from Mr. Brake's attorney, Mr. Brake explained that before his surgery he would pass out and fall over frequently because of pressure on his spinal cord. [AR 46]. Although this has not occurred since the surgery, he continues to experience difficulty standing, shooting pain in his legs and back, and numbness in his hands and wrists. [AR 47].

The ALJ then questioned the vocational expert. [AR 47–51]. The vocational expert first testified that Mr. Brake had performed the positions of stock clerk and stock control manager, which as performed in the national economy, involve heavy work and light work, respectively. The ALJ then had the vocational expert imagine a hypothetical individual who could occasionally lift twenty-five pounds; frequently lift 10 pounds; stand and walk for six hours during an eight-hour workday; and could never climb ladders, ropes, or scaffolds. [AR 48]. The ALJ asked the expert whether this individual could perform Mr. Brake's previous work. [AR 49]. The expert opined that an individual with these restrictions could perform the duties of a stock control manager. [*Id.*]

Finally, Mr. Brake's attorney questioned the vocational expert. [AR 49–50]. The expert testified that although the hypothetical individual could perform the general duties of a stock control

5

manager in the national economy, the individual could not perform Mr. Brake's previous responsibilities. [AR 49]. Then, Mr. Brake's attorney imposed additional restrictions on the hypothetical individual and asked the vocational expert whether the individual could complete the general duties of a stock control manager. [AR 50]. The vocational expert testified that an individual who could also not stoop, kneel, bend at the waist, or lift his arms above shoulder level would not be able to maintain employment as a stock control manager. [*Id.*]

The ALJ issued an unfavorable decision on April 5, 2016. [AR 16–24].

## **LEGAL STANDARDS**

### I.     **SSA's Five-Step Process for Determining Disability**

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he is, he is not disabled. *See* 20 C.F.R. § 404.1520. Step two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *See id.* Step three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R.

§ 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, he is presumed to be disabled. If the impairment does not satisfy step three, the ALJ must proceed to step four, which requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is capable of performing his previous work, either as he performed it or as it is generally performed in the national economy, he is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[C]laimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy."). However, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to step five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II. Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is

such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## **THE ALJ'S RULING**

The ALJ first ruled that Mr. Brake meets the insured status requirements of the Social Security Act through June 30, 2018. [AR 18]. Next, the ALJ determined that Mr. Brake has not engaged in substantial gainful employment since May 15, 2013—the alleged onset date. [*Id.*] At step two, the ALJ held that Mr. Brake has the following severe impairments: coronary artery disease, cervical stenosis with myelopathy, status-post fusion surgery, hypertension, chronic obstructive pulmonary disease, obesity, and peripheral vascular disease. [AR 18].

Moving to step three, the ALJ found that Mr. Brake's impairments or combination of impairments do not medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 18–20]. Relevant here, the ALJ found Mr. Brake's impairments do not equal Listing 1.04 for disorders of the spine. [AR 19]. According to the ALJ, the record does not contain evidence of spinal arachnoiditis or nerve root compression characterized by neuro-anatomic distribution of pain; limited motion of the spine; and motor, sensory, or reflex loss. [AR 19]. The ALJ also relied on the fact that no state agency physicians, consultative examiners, or treating physicians concluded that Mr. Brake's impairments meet a listing. [*Id.*]

8

At step four, the ALJ held that, based on Mr. Brake's impairments, he has a RFC to perform light work. [AR 20]. The ALJ limited Mr. Brake to lifting and carrying twenty-five pounds occasionally and ten pounds frequently; standing for a total of six hours; occasionally climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds; and occasionally stooping, kneeling, crouching, and crawling. [*Id.*] Additionally, the ALJ stated that Mr. Brake must avoid hazards in the workplace, such as moving machinery, operating a motor vehicle, and unprotected heights. [*Id.*] In making his determinations, the ALJ relied on Mr. Brake's disability report, his personal pain questionnaire, his testimony at the hearing, his activities of daily living, and the medical record. [AR 20–23]. According to the ALJ, although Mr. Brake's impairments could reasonably be expected to cause some of his alleged symptoms, Mr. Brake's statements concerning the intensity, persistence, and limiting effects of the symptoms are not consistent with the medical record. [AR 21].

The ALJ then discussed how the various medical opinions affect the RFC determination. [AR 22–23]. The ALJ first gave little weight to Dr. Oro's opinion. [*Id.*] According to the ALJ, Mr. Brake's testimony and the objective medical evidence do not support Dr. Oro's findings. [AR 23]. For example, Dr. Oro opined that Mr. Brake may lift no more than five pounds, while Mr. Brake testified that he can lift up to twenty-five pounds. [*Id.*] The ALJ then gave great weight to the opinion of the state agency physician, Dr. Homayoon Moghbeli, because Dr. Moghbeli's limitations were consistent with the medical record. [*Id.*]

Lastly, the ALJ found that Mr. Brake is capable of completing the duties of a stock control manager as that position is generally performed in the national economy. [*Id.*] Importantly, the ALJ stated that although Mr. Brake's prior duties as a stock control manager required medium exertion,

9

the position generally requires only light exertion. [*Id.*] Because Mr. Brake is capable of light work, the ALJ concluded he can maintain employment as a stock control manager. [*Id.*] As such, the ALJ held that Mr. Brake has not been disabled from May 13, 2013 through the date of the decision. [*Id.*]

## ISSUES ON APPEAL

On appeal, Mr. Brake alleges the following errors by the Commissioner: (1) assigning little weight to or not discussing the opinions of Mr. Brake's treating physicians; (2) finding that Mr. Brake's impairments do not equal or exceed the listing for disorders of the spine; and (3) concluding that Mr. Brake can perform his past relevant work as generally performed in the national economy. Opening Br., ECF No. 17.

## ANALYSIS

**I.     The ALJ's Discussion of Mr. Brake's Treating Physicians**

Mr. Brake first argues the ALJ improperly rejected the opinions of his treating physicians. Opening Br. 4–5, ECF No. 17. Specifically, Mr. Brake contends the ALJ erred when he gave little weight to Dr. Oro's opinion statement and when he failed to discuss "the weight given to Dr. Stephen Crowley." *Id.* Defendant contends the ALJ sufficiently supported his determination to apply little weight to Dr. Oro's opinion. Resp. Br. 7–15. Furthermore, Defendant asserts the ALJ was not required to assign weight to Dr. Crowley, because Dr. Crowley did not render an opinion. *Id.* at 15–16. The Court agrees with Defendant.

The treating physician rule generally requires that the Commissioner "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2). When determining how much weight to give an opinion from a treating source, the ALJ must complete a two-step inquiry,

10

each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the treating physician has offered a conclusive opinion; that is, whether it is to be accorded 'controlling weight' on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ:

> must consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (applying Social Security Ruling 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); *accord Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2).

If the opinion of the treating physician is not entitled to controlling weight, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. This is because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300.

The factors the ALJ must consider are:

> (1) The length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

11

*Krauser*, 638 F.3d at 1331. Without a discussion of these factors, remand is required. *Watkins*, 350 F.3d at 1300–01; *accord Krauser*, 638 F.3d 1330. However, the ALJ is not required to specifically analyze all six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

First, the ALJ did not err in assigning little weight to Dr. Oro's opinion, because substantial evidence supports the ALJ's conclusion that the opinion is inconsistent with the record.[2] Most notably, Mr. Brake's own testimony contradicts Dr. Oro's opinion. As stated by the ALJ, "Dr. Oro limited [Mr. Brake] to no lifting of over 5 pounds and no ability to stand. [Mr. Brake] testified that he does not experience pain unless he lifts more than 25 pounds, and that he can lift his 15-pound grandchild. . . ." [AR 23]. Similarly, Dr. Oro limited Mr. Brake to no walking or standing, [AR 296], while Mr. Brake testified that he can stand for three to four hours during the day. [AR 296].

Furthermore, the ALJ noted that the medical evidence does not support Dr. Oro's findings.[3] For example, treatment notes from 2013, 2015, and 2016 indicate that Mr. Brake denied having any dizziness, and notes from 2013 state that Mr. Brake did not experience any numbness or tingling. [AR 22]. Additionally, the ALJ stated that "June 2013 myocardial perfusion imaging results were

---

[2] In a heading, Mr. Brake asserts the ALJ erred by not first discussing whether Dr. Oro's opinion is entitled to controlling weight. Opening Br. 4. However, the Court can infer that the ALJ decided the opinion was not entitled to controlling weight. *See, e.g.*, *Armijo v. Astrue*, 385 F. App'x 789, 794–95 (10th Cir. 2010) ("[E]ven though the ALJ did not explicitly state that [the plaintiff's treating physician's] opinion was not entitled to controlling weight, that finding is implicit in his decision to accord little weight to the opinion.").

[3] Mr. Brake argues the ALJ failed to provide specific examples of how the medical evidence is inconsistent with Dr. Oro's findings. Opening Br. 4. However, the ALJ discussed the objective medical evidence immediately before analyzing Dr. Oro's opinion. [AR 22–23]. Moreover, when an ALJ discusses medical evidence in one section of his opinion, "he is not required to continue to recite the same evidence again in rejecting [the treating physician's] opinion." *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012).

normal with rest and pharmacologic stress." [*Id.*]

Mr. Brake argues in his reply brief that, because the ALJ relied on his testimony that contradicted Dr. Oro's findings, the ALJ should have also relied on his testimony that he gets dizzy when he stands and lacks feeling in his fingertips. Reply Br. 2, ECF No. 19. However, this argument essentially asks the Court to reweigh the evidence and substitute its own judgment for that of the ALJ in regards to Mr. Brake's testimony. This the Court cannot do. *See, e.g.*, *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("[W]e neither reweigh the evidence nor substitute our judgment for that of the agency."). Moreover, the ALJ gave specific reasons for rejecting Mr. Brake's testimony that he gets dizzy and lacks feeling in his fingertips; namely, it contradicted the medical record. [AR 22 (citing treatment notes from 2013, 2015, and 2016 indicating that Mr. Brake denied having dizziness and experiencing numbness or tingling)].

Because Dr. Oro's conclusions are not consistent with the record, the third and fourth factors weighed heavily against accepting Dr. Oro's opinion. To be sure, the ALJ did not discuss the length and nature of the treatment relationship or whether Dr. Oro is a specialist. However, as previously stated, "[t]hat the ALJ did not explicitly discuss all the § 404.15227[] factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review." *Oldham*, 509 F.3d at 1258; *see also Griner v. Astrue*, 281 F. App'x 797, 800 (10th Cir. 2008) (affirming an ALJ's decision to reject a treating physician's opinion as inconsistent with the record, notwithstanding that the ALJ did not discuss every factor in Section 404.15227(c)). Because the ALJ supported his decision to give little weight to Dr. Oro's opinion with "specific, legitimate reasons," the Court will not disturb the ALJ's finding. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Regarding Dr. Crowley, the ALJ did not err in failing to explicitly assign weight to his treatment notes, because Dr. Crowley did not provide an opinion regarding Mr. Brake's impairments. When a treating physician does not render an opinion describing specific work-related impairments, "the ALJ [is] not required to further assess the weight to afford the opinion." *Thao v. Colvin*, No. 14-cv-01793-RBJ, 2015 WL 4748022, at *3 (D. Colo. Aug. 12, 2015) (holding that the ALJ's failure to explicitly analyze the weight assigned to a treating physician's diagnosis was unproblematic, "[b]ecause the doctor did not describe any specific work-related impairments stemming from th[e] diagnosis."); *Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) ("Given that the ALJ did not reject the medical impairments found by [the treating physician] and there were no medical opinions regarding [the plaintiff's] work-related functional limitations, there was no opinion on matters by [the treating physician] for the ALJ to weigh."). Moreover, the ALJ did not completely disregard Dr. Crowley's notes. To the contrary, the ALJ discussed Dr. Crowley's treatment notes and found they supported his RFC finding. For example, the ALJ cited to Dr. Crowley's notes from visits on March 5, 2013, September 17, 2013, August 13, 2015, and February 16, 2016, which state Mr. Brake related he was not experiencing dizziness or numbness. [AR 22]. As such, the ALJ properly analyzed Dr. Crowley's treatment notes.

In sum, the Court holds that the ALJ did not err in assigning little weight to Dr. Oro's opinion. Additionally, the ALJ was not required to assign weight to Dr. Crowley's treatment notes, as Dr. Crowley did not render an opinion on Mr. Brake's impairments. Therefore, the ALJ's application of the treating physician rule does not require reversal of the ALJ's decision.

## II. The ALJ's Holding That Mr. Brake Does Not Meet Listing 1.04(A)

Mr. Brake next contends the ALJ erred in determining that his impairments do not meet or

equal the severity of Listing 1.04(A). Opening Br. 5, ECF No. 17. Defendant contends Mr. Brake fails to cite to evidence demonstrating his impairments meet each of Listing 1.04(A)'s criteria. Resp. Br. 17, ECF No. 18. The Court agrees with Defendant.

The SSA's Listing of Impairments includes Section 1.04 titled, "Disorders of the spine." 24 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04. Subsection A permits an individual to establish a disorder of the spine by demonstrating comprise of a nerve root or the spinal cord with evidence of nerve root compression. In full, Listing 1.04(A) provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

24 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A). "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007).

Here, Mr. Brake does not cite to (and the Court's review of the record does not reveal) evidence of each of 1.04(A)'s requirements. The only medical evidence to which Mr. Brake cites is Dr. Oro's initial evaluation note, which states that Mr. Brake has degenerative disks and cord compression. Opening Br. 4. As an initial matter, this document predates Mr. Brake's fusion surgery. The ALJ specifically noted that a post-surgery "MRI indicated that the fusion had improved the spinal stenosis." [AR 22]. Therefore, this pre-surgery evaluation was of marginal

15

utility to the ALJ in determining Mr. Brake's current condition.

Moreover, Listing 1.04(A) requires Mr. Brake to demonstrate more than spinal cord compression. The listing requires nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (with associated muscle weakness), and (4) sensory or reflex loss. 24 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A). Mr. Brake does not cite to medical evidence demonstrating each of these requirements, and the Court does not find evidence in the record establishing them. To the contrary, much of the record includes statements from Mr. Brake indicating that he did not have neuro-anatomic distribution of pain or muscle weakness. [AR 299–303]. For example, Dr. Crowley noted in 2015 and 2016 that Mr. Brake reports "no muscle aches, no muscle weakness, [and] no back pain."[4] [AR 301]. The ALJ also relied on Dr. Moghbeli's report, which considered whether Mr. Brake met Listing 1.04 and concluded that Mr. Brake is not disabled. [AR 55–59].

Because substantial evidence supports the ALJ's finding that Mr. Brake's impairments do not meet Listing 1.04(A), the Court will not reverse the ALJ's opinion on this ground. *See Candelario v. Barnhart*, 166 F. App'x 379, 383 (10th Cir. 2006) (affirming an ALJ's finding that the plaintiff does not meet Listing 1.04(A), because "the record does not contain significant evidence that shows [the plaintiff] meets the additional requirements of Listing 1.04(A)"); *see also Aslan v. Colvin*, 637 F. App'x 509, 509 (10th Cir. 2016) (rejecting a plaintiff's argument that he meets Listing 1.04, because the plaintiff "fails to direct our attention to any medical records confirming

---

[4] To the extent Mr. Brake asks the Court in his reply brief to reject this evidence and to accept evidence that Mr. Brake could not lift as much weight as before, the Court will not reweigh the evidence. *See Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987) ("[W]e neither reweigh the evidence nor substitute our discretion for that of the agency.").

he suffers from [the criteria in Listing 1.04(B)]").

## III. The ALJ's Finding That Mr. Brake Can Perform his Past Relevant Work

Lastly, Mr. Brake argues the ALJ erred in holding that his impairments do not preclude him from performing his past work as a stock control manager. Opening Br. 6–7, ECF No. 17. The Court will first address Mr. Brake's argument that the ALJ improperly determined his RFC. Then, the Court will analyze Mr. Brake's contention that the ALJ erred by not discussing whether he could perform a variety of a stock control manager's duties. The Court holds the ALJ did not err in the step four analysis.

Initially, to the extent Mr. Brake argues in the first paragraph of his opening brief that the ALJ incorrectly determined his RFC, the Court disagrees. Mr. Brake contends two of the ALJ's finding are contrary to Mr. Brake's testimony—that Mr. Brake can stand and walk for six hours a day and that he can occasionally stoop, kneel, crouch, or crawl. *Id.* at 6. Additionally, Mr. Brake states the ALJ did not discuss his inability to write or use computers with numb hands. *Id.* at 7.

However, the ALJ specifically considered much of Mr. Brake's testimony and found that some of his stated limitations were not supported by the record. The ALJ explained that Mr. Brake's activities of daily living "are not consistent with the level of limitations he has alleged." [AR 22]. For example, Mr. Brake testified that "he spends his days babysitting two granddaughters, one aged eight months, and the other aged six years. He changes diapers, prepares two meals, and gets the six [year] old ready for school." [*Id.*] Additionally, the ALJ stated that although Mr. Brake "has described problems with dizziness, treatment notes . . . indicate he denied having any dizziness at each encounter." [*Id.*] Similarly, although Mr. Brake testified he felt numbness and tingling in his extremities, "[i]n March and September 2013, [Mr. Brake] denied experiencing numbness or

17

tingling." [*Id.*] Moreover, Mr. Brake presents no evidence that any numbness or tingling he experienced prevents him from writing or using computers. In fact, Mr. Brake stated that his numbness does not cause him any problems other than some difficulty picking items up. [AR 40]. Holding that the ALJ should have given more credence to Mr. Brake's testimony would constitute an improper reweighing of the evidence. Therefore, the Court finds that the ALJ did not err in determining Mr. Brake's impairments, and the only remaining issue is whether the ALJ incorrectly determined that a person with Mr. Brake's limitations could perform the duties of a stock control manager.

Mr. Brake argues the ALJ disregarded many duties of a stock control manager that Mr. Brake cannot perform. Opening Br. 6–7. First, Mr. Brake cites the Dictionary of Occupational Titles, which states a stock control manager must prepare reports, keep records, and assist subordinates in their duties of bending, kneeling, stooping, and using lifts. *Id.* at 6. However, the ALJ's finding that Mr. Brake can participate in light work is consistent with these duties. Light work, as defined in 20 C.F.R. § 404.1567, does not prohibit writing or preparing reports, and the ALJ did not find that Mr. Brake is limited in this manner. Additionally, the ALJ's finding that Mr. Brake can occasionally stoop, kneel, crouch, and crawl is consistent with assisting subordinates in their duties of bending, kneeling, and stooping. As additional support, the vocational expert testified that an individual with Mr. Brake's RFC could perform the duties of a stock control manager. [AR 48–49].

Mr. Brake also cites to a variety of duties in a job description prepared by King Soopers, including using a forklift, power mule, and box cutters; standing 81–100% of the time; and lifting over fifty pounds 1–20% of the time. Opening Br. 6–7. However, the job duties relate to Mr. Brake's previous employment at King Soopers, not the general responsibilities of a stock control

18

manager in the national economy. The ALJ agreed with Mr. Brake that he does not have the ability to return to his work at King Soopers. [AR 23]. However, the ALJ determined that Mr. Brake is not disabled, because he has the ability to perform the duties of a stock control manager as that job is performed in the national economy. [*Id.*] As such, job requirements specific to Mr. Brake's prior position, but not part of the requirements of a stock control manager generally, are not relevant in determining whether the ALJ erred at step four. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[C]laimant bears the burden of proving his inability to return to his particular former job *and* to his former occupation as that occupation is generally performed throughout the national economy (emphasis added)). Therefore, the ALJ did not err in failing to consider whether Mr. Brake could perform a job that requires, among other duties, using a forklift, standing over 80% of the time, and lifting over fifty pounds.

In sum, substantial evidence supports the ALJ's determination of Mr. Brake's RFC. Given a light-work RFC, the ALJ did not err in holding that Mr. Brake can perform the duties of a stock control manager as generally performed in the national economy.

## CONCLUSION

The ALJ did not commit error in determining that Mr. Brake was not disabled from May 15, 2013 through the date of his decision. Specifically, the ALJ did not err in assigning little weight to Dr. Oro's opinion and in not assigning weight to Dr. Crowley's treatment notes. Furthermore, the ALJ's determination that Mr. Brake's impairments do not meet Listing 1.04(A) was based on substantial evidence. Finally, the ALJ did not err in determining Mr. Brake's RFC and in analyzing whether those limitations preclude Mr. Brake from performing the duties of a stock control manager. Accordingly, the decision that Plaintiff William R. Brake was not disabled is **affirmed**.

19

Dated at Denver, Colorado this 11th day of September, 2017.

        BY THE COURT:

        *Michael E. Hegarty*

        Michael E. Hegarty
        United States Magistrate Judge